Good morning. May it please the court, my name is Eitan Castellanich, and I am representing Eugenio Colon in this appeal. You couldn't stay away. I'm sorry? You couldn't stay away. Couldn't stay away. Colon has been diagnosed with several severe mental impairments, including bipolar disorder, mood disorder, learning disorder, cognitive disorder, and a personality disorder. I'd like to focus now on the ALJ's main errors that require reversal. The ALJ erred by rejecting the opinions of every treating and examining psychologist, psychiatrist, and nurse practitioner. Colon had been evaluated by several psychologists, including Dr. Bremer, Dr. Arenas, Dr. Quincy, and Dr. Alvord, and every one of them concluded that he has markedly impaired social functioning abilities. In addition, the medical evidence from Colon's treating psychiatrist, Dr. Sitar, his mental health therapists, an examining nurse practitioner, Dr. Mizrave, and the medical expert who testified at his hearing, Dr. McDevitt, is consistent with the opinions of Dr. Bremer, Dr. Arenas, Dr. Quincy, and Dr. Alvord. None of the ALJ's stated reasons for rejecting all of this evidence are convincing or even legitimate. Now, throughout my brief, I argue that there needs to be legitimate reasons, but in a way, the reasons ought to be convincing because since 2007, there's no contradiction. But setting that aside, I don't think any of the reasons are legitimate. The ALJ, in addition to rejecting the opinions of everyone who had treated and examined Colon, also rejected the opinion of the medical expert who testified at his second hearing. Dr. McDevitt, his testimony kind of went back and forth in various directions, but he did conclude that Colon would likely be unable to reliably attend to work, and that is consistent with the opinions of his treating and examining physicians. Now, at the same time, while the ALJ was rejecting the opinions of everyone who's ever examined or treated Colon, she gave great weight to the opinion of a non-examining state agency psychologist, Dr. Postevoit. A familiar name from yesterday. We saw her yesterday, or rather heard from her yesterday. So, Dr. Postevoit reviewed the file in November 2007, and the ALJ said that I'm giving her opinion great weight because it's, quote, consistent with the record as a whole, including Dr. McDevitt's persuasive opinion. Well, the irony there is that the ALJ rejected Dr. McDevitt's persuasive opinion and said that they're not consistent. Dr. Postevoit's opinion was not consistent with Dr. McDevitt's conclusion. Was it the opinion or the testing that he was crediting? I'm trying to remember. Dr. McDevitt did not do any testing. He testified by telephone based on his review of all of the evidence that was through the date of the hearing. Did Dr. McDevitt ever examine Mr. Colon? I think not. No, never met him. So we're talking about the two doctors who never examined your client. That is correct. But, once again, Dr. McDevitt, while the ALJ says Dr. Postevoit's opinion is consistent with Dr. McDevitt's persuasive evidence, she didn't accept Dr. McDevitt's conclusion. And his opinion was not consistent with Dr. Postevoit's opinion. But, more importantly, Dr. Postevoit, the ALJ said that Dr. Postevoit's opinion was consistent with the record as a whole. It was actually inconsistent with the opinions of every treating and examining physician throughout the record. Let me go at it this way. As I look at this record and I look at this claimant, he clearly has mental difficulties. He seems also to have difficulties with the truth that may be part of or a manifestation of the mental difficulties. So, in some ways, I don't fault the ALJ for giving an adverse credibility finding. But, in an odd way, I don't see that as resulting in a finding of no disability. I think it's part of the pattern. Can you help me with that? First off, am I wrong in saying that there's enough evidence here to support the adverse credibility finding? Well, that's a funny question because there are so many reasons stated by the ALJ for rejecting his credibility that are completely improper. Many of the reasons. But there is one reason, and I can see this in my brief. He did make inconsistent statements. His statements, he would say one thing, he'd say another thing. He would test positive for methamphetamine and then say, I've never done it. I mean, that is not defensible. But I think your point is well taken that some... ALJ only needs to be right on one reason, right? That's not... It gives multiple reasons. If one checks out, that's enough. Well, credibility is not a yes or no issue. Because if a person is dishonest about... Is it a true or false issue? Pardon me? Is it a true or false issue? You can be credible about some stuff and not be credible about other things. And the ALJ needs to tie the analysis to, you know, what is it about what he's saying that's not credible. And you're right. There are some statements that are so flagrant or some issues that are so... The credibility finding overwhelms the rest. The ALJ is not limited to the things he actually catches in a lie. If he catches him in a lie on some things, he can say, look, I find them not credible. And I'm therefore going to disbelieve some or all the rest of what he says because I caught him in a lie. He's not limited to the things that was a documented lie, right? You're correct. And the fact that he has multiple reasons for finding your client not credible, I mean, maybe the other reasons are debatable, but you can see there are some that are valid. And that's all you need is one valid reason among many. And if that one reason is valid, then that supports the adverse credibility definition, right? I disagree with that characterization. I think that one reason can be enough, but one reason is not always enough because if some of the other reasons are so off-base and improper, that can undermine the ALJ's credibility analysis, even if there was one reason... Even if he's caught in a lie. Pardon me? Even if the reason that does hold up is the fact that he's caught in a lie. If he's caught in a lie about something that has no real relevance to what's going on and to his disability or his problems, and the ALJ goes off on all sorts of incorrect tangents about all these reasons, which are complete, which are improper. And that's what I do run through that in my briefs, that she basically has one reason and I can't argue with that. She's got a bunch of others that aren't any good. So is the solution then to say to the ALJ, the following reasons for finding him incredible are invalid. There's one that's good. Now that we've really taken away from you all of these reasons, we're going to send it back to you to see whether you want to reassess your idea about what's credible and what's not. Is that what you want? Well, it's a hard thing to do, but that's basically what the court has to do. You're trying to weigh whether or not the ALJ's decision is still valid despite all of the mistakes that she made. And breaking that down, was her credibility analysis still valid despite all of the mistakes she made in that? But then I'm going to jump back to what your original point, which is even assuming that the credibility analysis, that that one reason is strong enough to overcome all the other reasons that are not valid, there are people who are disabled, who are not real credible. And I think this is one of these people. Every doctor, and the other thing is, one of the reasons that the ALJ gave for rejecting every opinion from every treating and examining provider is that, well, they just based their opinions on his subjective complaints. But that is not correct. That's not supported by substantial evidence. And so take away his credibility. Take away everything he said. You're still left with essentially uncontradicted evidence from every treating and examining provider and from the medical expert who testified at the hearing that this man is disabled. And I would like... Sorry. Jumping back to Postavoy, our friend, or Dr. Postavoy, did you challenge his testimony in the district court? I sure hope so. You did? I can't tell you, but I'll look that up and confirm that. Could you point out where you did it when you come back? Sure. Okay. We'll hear from the government. Good morning. May it please the court. My name is John Lamont. I represent the commissioner in this case. The commissioner asks that the court uphold the district court's judgment and affirm the ALJ's decision. Cologne has raised over a dozen assignments of error in this case, but there are really two overarching issues. One is Cologne's credibility. The second is the ALJ's resolution of the conflicting medical evidence. But the case can actually be resolved with one question. The answer to one question, and that question is, can we rely on what Cologne says in determining his functioning? This is the credibility analysis, but it is also one way to resolve the conflicting medical opinions in this case because the opinions are divided between those sources who accepted Cologne's statements and behavior at face value and those who looked more closely. The ALJ reasonably concluded that we cannot rely on what Cologne says, and she gave seven reasons for this finding. Cologne challenged three of these reasons in the district court, but he conceded a fourth that she made inconsistent statements. He did not challenge a fifth, his conviction for crimes of dishonesty. He did not challenge a sixth, his failure to cooperate and give full effort on examination. And he did not challenge a seventh reason, and I'll quote the ALJ on this one. I'll quote, the record strongly suggests the claimant has misrepresented his symptoms in order to improve his likelihood of being perceived as mentally disabled. And I want to emphasize this last reason because I'm not sure we can distinguish between misrepresenting symptoms in order to be disabled from lingering, but regardless, I think it's difficult to imagine a reason that is either more relevant or more probative to the question of whether we can accept Cologne's statements and behaviors at face value than evidence that he misrepresents his symptoms in pursuit of an agenda. And this is not a reason Cologne challenged in the district court until his reply brief, and so the district court found that the challenge had been waived. So on this record, it's not at all apparent how Cologne can meet his burden of establishing that the credibility finding is undermined by harmful error. So let's look at the medical opinions. This court recognizes that medical opinions are important and it requires clear and convincing reasons to reject uncontradicted medical opinions. But those are the relatively easy cases. The difficulty for the adjudicator comes when the medical experts disagree, and those are the majority of the cases. Let me ask it this way. Does the government contend that this man is not mentally unstable? He has these diagnoses of various aspects of mental illness. The government does not contest that. The ALJ found that he had severe mental impairments and assessed limitations. So that did seem to me that that was well established and that he would not contest that. As I look at this case, as I look at actually many of these cases, it's very clear to me that this claimant is not employable, period. But that's the case with a lot of Social Security cases where you look at this person, you know that he or she is not employable, but by the standards of the way the system works, some of them are given benefits because they're not employable, and some of them are given benefits on the fantasy that they are. But no one would hire this man, or having hired him would keep him on for more than a fairly short period. Well, in a way, Your Honor, that's a fair point. This man is mentally disabled. He's mentally ill. He does not tell the truth. He gets himself in trouble. So I'll come back to the point I made in a slightly different way at the outset. I'm quite prepared to believe that he tells lies and that he's not credible on certain aspects. But that doesn't mean that he's employable. Well, Your Honor, there's a difference between the credibility finding and the resolution of the medical opinion evidence. These are two sources of evidence that we look at to see the sort of limitations that the claimant has, and then we compare those limitations, of course, to the requirements of jobs that exist in significant numbers in the national economy. So you've got to find me a job to which somebody who's mentally ill can keep even though he is not going to show up for work very often. He's going to tell lies. Well, the question is, with respect to whether he shows up to work, is whether that's volitional or not. And Dr. McDevitt concluded that it wasn't entirely clear. The ALJ concluded that based on the fact that he has worked at substantial gainful levels in the past and based on evidence that he did not put forth full effort, that it was a volitional choice rather than— In fact, I think her word was solely volitional. I think that's accurate, yes. So, Your Honor, I think my response would be that there are various sources of evidence that we look at when we determine whether a claimant is disabled. We don't simply say they have a mental impairment and so they're disabled. We need to determine the severity of that mental impairment. And while it may be true that Mr. Colon tells lies, maybe one way to accommodate that limitation is to restrict his contact with others, and that is one of the restrictions in the residual functional capacity assessment. So the mere fact that he—I think the fact that Colon exaggerates his symptoms isn't a reason to say, well, we should take—that's consistent with disability, so we should accept what he says even though they're exaggerations. So we need to look for sources in the record for limitations, and we cannot rely on Colon because—for the seven reasons that the ALJ provided. So in this case, we have sharply divided medical opinions about Colon's limitations, but I think we can sort these three opinions into three groups, what I will call first the believers, second the questioner, and three, the non-believers. So the believers do not express any reservations, but instead accept Colon's behaviors and statements at face value, and they generally conclude that he is profoundly limited. Dr. Bremer said that Colon is pervasively unstable. Ms. Rive diagnosed him with pervasive developmental disorder and said that he was not able to care for himself. Dr. Quincy said Colon had marked to severe cognitive limitations. Dr. Alvord said that Colon's ability to concentrate and persist were moderately to severely impaired. But Dr. Arenas is the questioner, so he evaluated Colon, and he said that he was not able to function in a competitive workplace, but he had questions about Colon's unusual presentation, which— It's exciting to me. It sounds like it's an award of benefits case. I mean, doctor after doctor who examines him says he's got severe impairments. Well, I think the key— The only people who disagree are those who never saw him. But there's a big difference in this case between the examiners who— the psychologists who examined Mr. Colon and those who did not, and that difference is the psychologists who examined the record saw Mr. Colon's behavior in the context not just of a specific discrete psychological examination, but his treatment history and, importantly, his interactions with doctors treating his physical complaints. So in the record you have two days apart. So on one day he goes for a psychological evaluation. He acts like a child. He occupies himself with a coloring book, and the very next day he goes to a physical examination. I mean, I know he's exhibiting all kinds of bizarre behavior. But he does not do that at physical examinations, and that was one of Dr. Postavoy's points. Dr. Postavoy also noted that— So the behavior when he— in physical examinations versus psychological examinations, and she said his behavior was, quote, so erratic and bizarre that he would surely have been seen for competency and sanity evaluations with criminal charges if the behaviors he demonstrated were true. And if you look at his prison records, in fact, they reflect very little in the way of mental health treatment, which is something that Dr. Postavoy had also observed. Did counsel challenge Postavoy in the district court? He did not, Your Honor. So the ALJ's reasoning is well supported. With the exception of Dr. Alvord, the medical sources on which Cologne relies did not review records. Even Dr. Alvord reviewed only Dr. Arenas' examination, so he did not see the evidence that raised red flags for Dr. Postavoy and Dr. McDevitt. Consequently, Dr. Alvord wrote, although he was somewhat dramatic, I do not have concerns regarding the validity of this evaluation. But as I mentioned, Cologne presented very differently in mental examinations than he did otherwise, and this is very clearly illustrated in the record. Excuse me. Yes. I hate to interrupt, but you mentioned McDevitt. So the ALJ did give weight to both Postavoy and McDevitt, but then counsel says that he didn't accept the opinion. So what's your response to that? Well, Dr. McDevitt said he did not think that Cologne would show up to work, but he wasn't clear as to whether or not that was a volitional choice or the result of his impairment. So the ALJ has a duty to resolve this conflict and determine whether or not this is volitional or whether it's a result of his impairment, and the ALJ is entitled to do that by drawing logical inferences in the record. And the ALJ pointed to the fact that Cologne had worked at substantial gainful levels in the past. Indeed, he worked during his period of incarceration, and also the fact that he failed to give full effort on examination and that he didn't cooperate with those examinations. I see my time is almost up unless the court has any other questions I can address. Thank you. Thank you. Let me start by responding to your question about Dr. Postavoy. I did not address that in district court because I was focused in district court on the fact that the ALJ had rejected the opinion of Dr. A, B, C, D, E, F, G, H. And I didn't say... And she rejected Dr. McDevitt's opinion, which was she had obtained, presumably, to try to help her resolve the... Look at all the evidence. Have somebody look at all the evidence. What do they have to say? And I do think it is contradictory for the ALJ to, at the same time, say I find Dr. McDevitt's opinion to be persuasive, I give it great weight, and yet his conclusions that this guy obviously can't work because of his personality disorder, that's basically his conclusion, is ultimately consistent with the opinions of all of the doctors who actually examined him and who actually treated him. Okay. Thank you. Thank you. I'm sorry I was absent a minute.
judges: Kozinski, Fletcher, Fisher